UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KENALL MANUFACTURING          )
COMPANY,                      )
                              )      No. 05 C 1138
   Plaintiff/Counter-Defendant, )
                              )
v.                            )      Judge Ruben Castillo
GENLYTE THOMAS GROUP LLC      )
                              )
   Defendant/Counter-Plaintiff. )

## MEMORANDUM OPINION AND ORDER

On February 25, 2005, Kenall Manufacturing Company ("Kenall") filed suit against Genlyte

Thomas Group, LLC ("Genlyte") seeking a declaratory judgment that Kenall's products do not

infringe upon Genlyte's Patent Number 5,038,254 ("the '254 Patent.") (R. 1, Compl.) On March

4, 2005, Genlyte answered the Complaint and counterclaimed that Kenall infringed on the '254

Patent. (R. 8, Answer & Countercl.) Pursuant to the Court's order, the parties filed a Joint

Statement of Claim Language in Dispute ("Joint Statement") on June 30, 2005, stating that they

dispute construction of certain phrases in claim 1 of the '254 Patent. (R. 23, Joint Statement.) The

Court then ordered briefing by the parties on the proper construction of the disputed terms in

accordance with *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995). Kenall filed

its Markman statement with the following documents attached: the '254 Patent; U.S. Patent No.

5,086,375; U.S. Patent No. 5,160,193; and U.S. Patent No. 3,928,757. (R. 26, Kenall Markman,

Exs. 1-4). Genlyte then filed its Markman statement, attaching the following documents: the '254

Patent; the '254 Patent prosecution history;[1] excerpts from 1987 and 1993 volumes of various lighting handbooks; a "Statement by Thomas M. Lemons, a Person Skilled in the Lighting Arts" ("Lemons Statement"); and excerpts from Webster's Ninth New Collegiate Dictionary. (R. 27, Genlyte Markman, Exs. A-E.)

In Kenall's reply brief, Kenall attached the following additional exhibits: "Statement of William E. Brackett A Person Skilled In Lighting Arts" ("Brackett Statement"); excerpts from the 1943 edition of the Hospital Lighting Data Book; U.S. Patent Number 2,557,129; and technical information sheets on Genlyte's MD*4 lighting system. (R. 28, Kenall Reply, Exs. 1-4.) In response, Genlyte filed a surreply attaching a "Sur-Reply Statement of Thomas M. Lemons" and an excerpt from the 1993 edition of the Lighting Handbook. (R. 31, Genlyte Surreply, Exs. F-G.) Genlyte also filed a motion to strike the statement of William Brackett on January 4, 2006. (R. 32, Mot. to Strike.)

## THE '254 PATENT

The '254 Patent describes an integrated ceiling-mounted medical lighting system which includes three individual dedicated light fixtures. (R. 26, Kenall Markman, Ex. 1 ("'254 Patent"), Abstract; and col.1, ll.62-64.) The lighting system is rectangular, and it is designed to be placed near where the wall and the ceiling connect at the head of a patient's hospital bed. ('254 Patent, col.1,

---

[1] The United States Patent and Trademark Office ("PTO") issued the '254 Patent on the first office action with no substantive changes, so the prosecution history is not helpful to claim construction in this case. (R. 26, Kenall Markman at 3; R. 27, Genlyte Markman at 13.) While Genlyte argues that the lack of prosecution history shows the PTO recognized the pioneering status and broad nature of the '254 Patent, Kenall argues the PTO's quick approval proves the narrow nature of the '254 Patent. (R. 27, Genlyte Markman at 13; R. 28, Kenall Reply at 10.) Neither party, however, has any legal or factual basis for making these arguments, and the Court will not use the absence of prosecution history as an aid to claim construction in this case.

ll.65-68.) These three light fixtures include a reading light, an examination light, and an ambient light. ('254 Patent, Abstract.) The parties dispute the claim language defining the reading and ambient lights, light fixtures 1 and 2.

## ANALYSIS

Before proceeding on the issue of infringement, the Court must determine the meaning of any disputed claim language as a matter of law. *Markman*, 52 F.3d at 979. The parties dispute the meaning of the two independent claims of the '254 Patent, claims 1 and 3.[2] The remaining claims are dependent.[3] (R. 26, Kenall Markman at 1; R. 27, Genlyte Markman at 4.) Claim 1 states, in relevant part:

> A medical lighting system comprising: a body; means for ceiling-mounting said body; a first light fixture within said body oriented to direct light downwardly to a selected reading area under said body; a second light fixture within said body oriented to direct light downwardly and outwardly to a vertical wall surface outwardly adjacent from said body whereby light is reflected back to a broad area under said body.

('254 Patent at col.3, ll.37-48.) Although not mentioned in their Joint Statement, the briefs make clear that the parties also dispute the identical language in claim 3.[4] Within claim 1 and 3, the parties

---

[2]In the Joint Statement, the parties also ask the Court to determine whether the first and second light fixtures constitute a "means plus function" element according to 35 U.S.C. § 112 ¶ 6. The parties, however, have not addressed this issue in their briefs. (R. 23, Joint Statement at 1-2.) The Court notes that if the disputed claim term does not use the word "means," there is a presumption that 35 U.S.C. § 112, ¶ 6 does not apply. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1369 (Fed. Cir. 1991).

[3]A claim is "independent" if it stands on its own, and a claim is "dependent" if it refers to another claim in its preamble.

[4]The parties do not dispute the additional language in claim 3: "a third light fixture within said body oriented to direct light downwardly under said body to a selected patient examination area." ('254 Patent at col.4, ll.1-3.)

3

specifically dispute the meaning of the phrases: "a first light fixture within said body oriented to direct light downwardly to a selected reading area under said body;" and "a second light fixture within said body oriented to direct light downwardly and outwardly to a vertical wall surface outwardly adjacent from said body whereby light is reflected back to a broad area under said body." ('254 Patent at col.3, ll.54-64.) In the Joint Statement, the parties further limited the disputed words to "oriented to direct light" and "outwardly adjacent." However, the parties' briefs show that the two phrases as a whole are in dispute, and the Court will thus consider the disputed phrases in their entirety.

## I.     Legal Standards

The Federal Circuit mandates that district courts begin their claim construction analysis with the words of the claim, as they define the invention. *Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1142 (Fed. Cir. 2005). The words of the claim are generally given their "ordinary and customary meaning," which is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention. *Id.* The Court must then consider the patent specification and the prosecution history, as the person of ordinary skill in the art views the claim term in the light of the entire intrinsic record. *Id.* "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id.* Finally, the Court may look at extrinsic evidence such as dictionaries, treatises, and expert testimony; "[h]owever, undue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the indisputable public records consisting of the claims, the specification and the prosecution history, thereby undermining the public notice function of patents." *Id.* at 1143. *See also Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).

4

## II. First Light Fixture: "oriented to direct light downwardly to a selected reading area under said body."[5]

### A. Words of the Claim

In accordance with the standard set out in *Phillips* and reiterated in *Nystrom*, when construing a claim the Court first considers the words of the claim, which "themselves provide substantial guidance as to the meaning of particular claim terms." *Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1373 (Fed. Cir. 2005) (quoting *Phillips*, 415 F.3d at 1314). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. In most cases, however, courts must dig deeper into the meaning of the claim language.

With regard to the first light fixture, Kenall claims that the phrase "oriented to direct light" requires that "the fixture in question be designed to emanate more light toward the designated target than in any other direction." (R. 26, Kenall Markman at 3.) Genlyte counters that "oriented to direct light" simply means "to set or arrange to direct light." (R. 27, Genlyte Markman at 22.) However, when considering the entire disputed, "oriented to direct light *downwardly*," very little difference between the parties' proposed constructions remains. To set or arrange to direct light *downwardly* has the same meaning as to emanate *more light in a downward direction*. This construction is clear on the face of claims 1 and 3. Claim 1 states that the first light fixture is oriented to direct light "downwardly," while the second light fixture is oriented to direct light "downwardly and outwardly."

---

[5]Although in the Joint Statement, the parties ask the Court to construe the phrase, "selected reading area under said body," neither party addressed this issue in their briefs. (R. 23, Joint Statement at 2.)

Thus, the first light fixture in claim 1 must direct more light downwardly than outwardly; otherwise, the words "and outwardly" would be meaningless. "An interpretation of one claim that renders another claim meaningless is disfavored." *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1173 (Fed. Cir. 2005).

Genlyte admits that light from lamps of a light fixture can go downwardly, outwardly, and/or upwardly, and the '254 Patent specifies the direction or directions the light goes. (R. 31, Genlyte Surreply at 3.) It follows that a light fixture oriented to direct light downwardly is not oriented to direct light outwardly or upwardly. This distinction would be meaningless without an understanding that "more" light must go downwardly than outwardly or upwardly. Far from reading a quantitative term into the claim or limiting the '254 Patent to its preferred embodiment (R. 27, Genlyte Markman at 15), the modifier "more" follows from the language of the '254 Patent itself. Accordingly, the Court finds the correct construction of the phrase, "oriented to direct light downwardly" to be: "to set or arrange to direct more light in a downward direction than in an upward or outward direction."

## B.  Intrinsic Record

"The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Phillips*, 415 F.3d at 1316; *Nystrom*, 424 F.3d at 1142. The intrinsic record consists of the patent specification – the claims and the written description of the patent – and the prosecution history.[6] *Nystrom*, 424 F.3d at 1142. "The specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at

---

[6]As explained above, the absence of prosecution history for the '254 Patent does not aid the Court in claim construction.

1315 (citations omitted).

The '254 Patent's specification supports the construction that "oriented to direct light downwardly" means that more light is directed in the downward direction than in an upward or outward direction. The same language is used in the undisputed portion of claim 3, which states: "third light fixture within said body oriented to direct light downwardly under said body to a selected patient examination area." ('254 Patent at col.4, ll.1-3.) The light from the third light fixture arranged to direct more light downwardly than upwardly or outwardly so that a selected patient examination area may be highlighted. The written description supports this interpretation, as the "Abstract" states that the reading light -- a.k.a., the "first light fixture" – is "directed toward a selected reading area on a hospital bed directly below the medical lighting system." ('254 Patent.) The first light fixture must be set or arranged to direct more light downward to this "selected reading area" like the "selected patient examination area," to avoid rendering this language meaningless. Likewise, this meaning is bolstered by the "Background of the Invention" section, which states that the reading light "provides direct light to a portion of the patient's bed" ('254 Patent at col.1, ll.14-16), and the "Objects and Summary of the Invention" section of the '254 Patent, which states that the first light fixture is "designed to direct light toward the forward portion of the patient's bed so as to allow the patient to read comfortably." ('254 Patent at col.2, ll.3-6.)

## C.    Extrinsic Evidence

Extrinsic evidence is all evidence outside the patent and its prosecution history. *Markman*, 52 F.3d at 980. Extrinsic evidence is less significant and less reliable than the intrinsic record in determining the legally operative meaning of claim language. *Phillips*, 415 F.3d at 1317-18. Sources of extrinsic evidence, such as expert testimony, dictionary definitions, technical treatises,

7

and articles may not be used to vary or contradict a claim's meaning that is unambiguous in light of the intrinsic evidence. *Phillips*, 415 F.3d at 1324 (adhering to and reaffirming the Federal Circuit's approach to claim construction outlined in *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996)). Accordingly, the Federal Circuit has found it unnecessary to consider extrinsic evidence where the intrinsic evidence was unambiguous and sufficient to support the claim construction. *See Koepnick Med. & Educ. Research Found., L.L.C. v. Alcon Labs., Inc.*, No. 05-1215, 2005 WL 3543012, at *6 (Fed. Cir. 2005); *Vitronics*, 90 F.3d at 1584 ("[W]here the patent documents are unambiguous, expert testimony regarding the meaning of a claim is entitled to no weight.") Although this Court finds the '254 Patent language unambiguous as shown above, this Court will briefly review the extrinsic evidence in this case, which tends to support this Court's claim construction.

## 1. Expert Testimony

Expert evidence may be especially unreliable because "expert reports and testimony is generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Phillips*, 415 F.3d at 1318. Genlyte seeks to strike the statement of William Brackett, Kenall's purported expert, first on the grounds that Brackett is not a person of ordinary skill in the art. (R. 32, Mot. to Strike.) In order to determine the value to be accorded to the statements of persons of ordinary skill in the art, the Court must first determine the "relevant art" and the "level of ordinary skill in the art." *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716 (Fed. Cir. 1991). The "relevant art is defined by the nature of the problem confronting the would-be inventor." *Id.* Genlyte argues that the relevant art is lighting design, or even more specifically, medical lighting design. (R. 32, Genlyte Mot. to Strike at 12-15.) Kenall, on the other hand, claims

8

that the relevant art is light distribution and measurement or lighting design. (R. 40, Resp. to Mot. to Strike at 10.) Contrary to Genlyte's contention, the relevant art is not limited to medical lighting systems, or even lighting fixture design. Although the inventor of the '254 Patent sought to improve medical lighting systems over patients' beds, the "nature of the problem confronting the would-be inventor" is broader than Genlyte contends: the problem is how to appropriately distribute light from the light fixtures to serve certain stated purposes. Expertise in lighting design, measurement, or distribution would be important to solve this problem. Thus, the relevant art is lighting design, measurement, or distribution. *See Ryko*, 950 F.2d at 718-19.

"The level of ordinary skill in the art" is determined by considering factors such as the educational level of the inventor and those who work in the industry, and the sophistication of the technology involved. *Id.* at 718. Genlyte contends that Brackett does not have the level of ordinary skill in the art when the relevant art is defined as lighting design. (R. 32, Genlyte Mot. to Strike at 12-15.) While it is true that Brackett only has limited experience in the field of lighting design, he has extensive technical experience in the art of lighting measurement and distribution, as this Court has defined the relevant art. Brackett has thirty years experience in the application, testing and analysis of a wide variety of light fixtures. (R. 28, Kenall Reply, Ex. 1 ("Brackett Statement") at 1-2.) In addition, he has published six papers in the *Journal of the Illuminating Engineering Society* dealing with lighting measurements and he served as chair of the Illuminating Engineering Society of North American ("IESNA") Technical Knowledge Exam Committee. (*Id.*) Thus, Brackett qualifies as one of ordinary skill in the art.

Genlyte also argues that Brackett's Statement should be stricken on the grounds that it was largely ghost-written by Kenall counsel. (R. 32, Motion to Strike at 1.) Federal Rule of Civil

9

Procedure 26 requires an expert's report to be "prepared and signed by the witness." Fed. R. Civ. P. 26. Although Rule 26 does not prohibit a party's attorney from providing assistance to the expert, "[p]reparation implies [an expert's] involvement other than perusing a report drafted by someone else and signing one's name at the bottom to signify agreement." *Manning v. Crockett*, No. 95 C 3117, 1999 WL 342715, at *3 (N.D. Ill. May 18, 1999). Genlyte points primarily to Brackett's October 11, 2005 deposition testimony to show that Kenall counsel in essence drafted the Brackett Statement. (R. 32, Mot. to Strike at 3-8.) At his deposition, Brackett did not remember and showed some uncertainty about the details of the preparation of his Statement. (R. 32, Mot. to Strike at 3-8; R. 44, Reply to Mot. to Strike at 5-7). In response to Genlyte's motion to strike, Kenall provided evidence that Brackett's statement was indeed drawn from Brackett's opinion and not from Kenall's attorney. Kenall attached to its response: (1) eight pages of Brackett's notes about the '254 Patent (R. 40, Resp. to Mot. to Strike, Ex. 1); (2) a declaration by Brackett stating that (a) Kenall's attorney, Matthew Fannin, spoke with Brackett for one and a half hours before Fannin drafted a report of Brackett's opinion, (b) Brackett spent three hours reviewing and editing this draft "to ensure it was a complete representation of my opinion," and (c) the next day Brackett requested further changes be made until "the Statement represented the opinion [he] wanted to put forth" (R. 40, Resp. to Mot. to Strike, Ex. 2); and (3) e-mail correspondence with attachments of various forms of the Brackett Statement after edits by Brackett and Fannin (R. 40, Resp. to Mot. to Strike, Exs. 3-4). After considering Brackett's deposition testimony, the drafts of Brackett's Statement, Brackett's declaration, and the e-mails, "the [C]ourt cannot exclude the possibility that the [brief] was drawn from [Brackett's] opinions rather than the other way around." *Solaia Tech. LLC v. ArvinMeritor, Inc.*, 361 F. Supp. 2d 797, 805 (N.D. Ill. 2005). Therefore, Genlyte's motion to strike is denied. (R.

32.)

### a. Brackett Statement

Although the Court declines to strike Brackett's Statement, it nevertheless has very little probative value. "[C]onclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court." *Phillips*, 415 F.3d at 1318 (citations and quotations omitted); *see also Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005). Brackett's Statement consists almost entirely of conclusory, unsupported assertions. Although Brackett states that he reviewed several patents, the IESNA Handbook, and the parties' Markman statements, he does not once reference any of these or other materials in support of his seven-page opinion of the correct construction of claims 1 and 3 of the '254 Patent. (*See* Brackett Statement.) Rather, Brackett sets forth his opinion without any support for it. Therefore, this Court accords very little value to Brackett's Statement.

### b. Lemons

In contrast, the conclusions of Genlyte's expert, Thomas Lemons, are generally well-supported by lighting handbooks and other primary materials,[7] and, in fact, support the Court's construction of the phrase "oriented to direct light downwardly." Lemons defined this phrase as "to set or arrange to direct illumination to an area below the product." (Lemons Statement at 2.) Lemons' response to Brackett's Statement shows that he believes more illumination must be directed below the product than above. In his surreply, Lemons states that Brackett does not identify the "certain direction" where the fixture "emanates more light." (R. 31, Genlyte Surreply, Ex. F ("Lemons Surreply") at 4.) However, Lemons agreed that "[i]f the 'certain direction' is down and

---

[7]Kenall does not dispute that Lemons is a person of ordinary skill in the art.

the other direction is up then I can accept that [Brackett] understands the use of these terms." (*Id.*)

2.    **Dictionaries and Treatises**

"Within the class of extrinsic evidence, the court has observed that dictionaries, especially technical ones, and treatises can be useful in claim construction." *Phillips*, 415 F.3d at 1318. They may not, however, be used to construe a claim "divorced from the context of the written description and prosecution history." *Nystrom*, 424 F.3d at 1144-45. Both parties have attached excerpts from the IESNA Lighting Handbook, the Hospital Lighting Data Book, and Webster's Ninth New Collegiate Dictionary; however, most of these excerpts do not shed light on the disputed claims in this case. This evidence primarily goes to the issue of whether a certain construction of the '254 Patent claims would render the '254 Patent invalid in light of the prior art.[8] Only the definition of "orient" in Webster's Ninth New Collegiate Dictionary 832 (1987), relates directly to claim construction in this case. Webster's defines "orient" as "to set or arrange in any determinate position esp. in relation to the points of the compass." (R. 27, Genlyte Markman, Ex. D). This definition, referring to a "determinate position" in relation to points of the compass, supports this Court's construction that the first light fixture sets or arranges more light in a downward direction than in any other direction. Another construction would render the term "determinate" pointless.

3.    **Patent Numbers 5,086,375 and 5,160,193 and 3,928,757**

Kenall argues that the '254 patent is the "parent application" for two continuation-in-part patent applications, Patent No. 5,086,375 ("the '375 Patent) and Patent No. 5,160,193 ("the '193 Patent"), and that these patents should be considered relevant intrinsic evidence in construing the

---

[8]The issue of invalidity is generally not relevant when construing unambiguous claims. *See infra*, section 4, "Invalidity."

'254 Patent claims. (R. 26, Kenall Markman at 8, Exs. 2 and 3.) A separate patent, however, even if it is a continuation-in-part patent application, does not constitute relevant intrinsic evidence for the '254 Patent. *See Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1167 (Fed. Cir. 2004) (while first patent cited in the prosecution history was part of intrinsic record, second patent created as a continuation-in-part of the original patent was new matter that at most constituted extrinsic evidence). In addition, the '375 and '193 Patents have little value as extrinsic evidence, as there is no proof that use of the phrase "oriented to direct light" in the '375 and '193 Patents has the same construction as in the '254 Patent, where the '375 and '193 Patents deal with a "light fixture module" rather than a "light fixture." (R. 26, Kenall Markman at 8, Exs. 2 and 3.)

Kenall also argues that Patent No. 3,928,757 ("the '757 Patent") is relevant extrinsic evidence, and Kenall asks the Court to determine that the word "directs" in the '254 Patent has the same meaning as in the '757 Patent. (R. 26, Kenall Markman at 11.) The '757 Patent, unlike the '254 Patent, however, deals with a spotlight, and there is no evidence that the term "directs" is used in the same way in both patents. (R. 26, Kenall Markman, Ex. 4.)

### 4. Invalidity

Kenall also claims that the Court should not adopt the claim construction proposed by Genlyte because if such a construction were adopted the claims would be invalid.[9] (R. 28, Kenall Reply at 5.) While claims should be construed to preserve their validity, validity analysis is not a

---

[9]Kenall also claims that Genlyte's proposed construction would exclude Genlyte's commercial embodiment of the '254 Patent, specifically the MD*4 lighting systems. (R. 28, Kenall Reply at 12-13.) A commercial embodiment, like the preferred embodiment, should not limit the claims of a patent. *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1368 (Fed. Cir. 2005). Moreover, the MD*4 information sheets' statement that direct glare is eliminated does not mean that no light shines directly beneath the light. (See R. 31, Genlyte Surreply at 6-7.)

regular component of claim construction. *Phillips*, 415 F.3d at 1327 (citations and quotations omitted). Instead, this maxim is limited to cases in which "the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous." *Id.* (citations and quotations omitted). *See also Free Motion Fitness, Inc. v. Cybex Intern., Inc.*, 423 F.3d 1343, 1349 (Fed. Cir. 2005) (rejecting party's request to construe claims to preserve their validity because claim was not ambiguous). As this Court has already ruled, the claims are not ambiguous in light of the words of the claims themselves and the intrinsic record.

**III.  Second Light Fixture: "oriented to direct light downwardly and outwardly to a vertical wall surface outwardly adjacent from said body whereby light is reflected back to a broad area under said body."**

    **A.  "Vertical wall surface outwardly adjacent from said body whereby light is reflected back to a broad area under said body"[10]**

Kenall claims that with regard to the second light fixture, "outwardly adjacent" refers to "the vertical wall surface closest to the body of the lighting system." (R. 26, Kenall Markman at 3.) Genlyte argues, however, that "outwardly adjacent" merely means "next to or near." (R. 27, Genlyte Markman at 2.) While Kenall's proposed construction goes too far, Genlyte's does not go far enough.

    **1.  Intrinsic Record**

"Outwardly adjacent" must mean more than "next to or near," because to decide otherwise would render the term "outwardly" meaningless. "When different words or phrases are used in separate claims, a difference in meaning is presumed." *Nystrom*, 424 F.3d at 1143; *see also*

---

[10]Although in the Joint Statement, the parties ask the Court to construe the phrase, "whereby light is reflected back to a broad area under said body," neither party addressed this issue in their briefs. (R. 23, Joint Statement at 1.)

*Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1331 (Fed. Cir. 1999) ("Unless the patent otherwise provides, a claim term cannot be given a different meaning in the various claims of the same patent"). The term "adjacent" is found several times within the claims of the '254 Patent, in addition to claims 1 and 3. Dependent claim 9 states that:

> The medical lighting system of claim 5[11] . . . wherein said second fluorescent light fixture is *inwardly adjacent* to said first fluorescent light fixture and said second fluorescent light fixture is parallel to first shorter end; and wherein said third fluorescent light fixture is *outwardly adjacent* from said second fluorescent light fixture and abuts a second shorter end of said body . . .

('254 Patent, col. 4, ll.24-37) (emphasis added). In contrast to claim 9, claim 14 refers to the term "adjacent" on its own: "The medical lighting system of claim 3 wherein a distribution of light from said first and second light fixtures excludes glare from areas *adjacent* to a standard hospital bed placed below the medical lighting system." ('254 Patent, col.4, ll.60-64) (emphasis added).

Claim 9 provides valuable insight into the meaning of the phrase "outwardly adjacent," as it is used together with the phrase "inwardly adjacent." The second light fixture is "inwardly adjacent to" the first light fixture, and the third light fixture is "outwardly adjacent from" the second light fixture and "abuts a second shorter end of said body." ('254 Patent, col. 4, ll.24-37.) Claim 9 further explains that "said body is rectangular and a first shorter end [sic] of said body is designed to abut the vertical wall surface," and the first light fixture abuts this first shorter end. ('254 Patent, col.4, ll.25-28.) This language plainly states that the first light fixture (the reading light) is closest to the vertical wall surface, as it "abuts" the wall surface. Therefore, the second light fixture (the ambient light), which is "inwardly adjacent" to the first light fixture, must be further from the

---

[11]Claim 5 involves "[t]he medical lighting system of claim 4," which involves "[t]he medical lighting system of claim 3."

vertical wall surface. It follows that the third light fixture, which is "outwardly adjacent from" the second light fixture, is even further away from the vertical wall surface, since the first light fixture abuts the wall.

The written description of Figure 1, which is described as a "Preferred Embodiment" of the '254 Patent ('254 Patent, col.2, ll.27-28), supports the Court's construction of the terms in claim 9.[12] Figure 1 is a diagram of the ceiling mounted structure. The description of Figure 1 states that: "[a]mbient light reflector 24 is inwardly adjacent to reading light reflector 20" ('254 Patent, col.2, l.50); and "[e]xamination light reflector 28 is outwardly adjacent to ambient light reflector 24, includes short side 18 and is opposite from reading light reflector 20." ('254 Patent col.2, ll.66-67.) In the preferred embodiment figure, reading light reflector 20 is at the end of the ceiling mounted body that is closest to the wall. ('254 Patent, Fig. 1.) Ambient light reflector 24 is closer to the center of the ceiling mounted body, further away from the wall. ('254 Patent, Fig. 1.) Examination light reflector 28 is even further away from the wall, and thus further from the center of the ceiling mounted body. ('254 Patent, Fig. 1.)

The language in claim 9 and the written description of Figure 1 shows that "a vertical wall surface outwardly adjacent from said body" does not necessarily mean "the vertical wall surface closest to the body of the lighting system," as in both cases, the "outwardly adjacent" light fixture or reflector was the furthest from the vertical wall surface abutting the body of the lighting system. In addition, the "inwardly adjacent" light fixture or reflector in both cases is closest to the center of

_____

[12]While Figure 1 is described as a "side plan view of lighting fixture 10" ('254 Patent, col.2, l.32), the '254 Patent only contains claims for a light fixtures 1, 2, and 3. As Figure 1 is the preferred embodiment of the '254 Patent, "lighting fixture 10" must be the ceiling mounted body of the preferred embodiment of the medical lighting system at issue.

16

the ceiling mounted body. It follows that "inwardly adjacent" to a vertical wall would be the vertical wall closest to the center of the ceiling mounted body; that is, any vertical wall that is adjacent to the horizontal side of the ceiling mounted body, but not the ends of said body.

Moreover, claim 9 shows that the '254 Patent refers to the vertical wall surface closest to the body of the lighting system as "designed to *abut* the vertical wall surface" ('254 Patent, col.4, l.26) (emphasis added) or in claim 12 as "*substantially abutting* the vertical wall surface." ('254 Patent, col.4, ll.53-54) (emphasis added). Thus, the Court finds that the '254 Patent's claims and written description show that the meaning of the phrase, "a vertical wall surface outwardly adjacent from said body," is: "a vertical wall surface next to or near either end of said body."

### 2. Extrinsic Record

#### a. Expert Reports

This Court's construction of the phrase "a vertical wall surface outwardly adjacent from said body" aligns with Lemons' original opinion that the phrase means "the wall is next to or near one end of the housing." (R. 27, Genlyte Markman, Ex. C at 2.) Interestingly, in stating its proposed construction, Genlyte dropped the second part of the phrase, "one end of the housing," arguing that "outwardly adjacent" should simply mean "next to or near." (R. 27, Genlyte Markman at 20-22.)

#### b. Dictionary Definitions

Genlyte points to the Webster's Dictionary definition of "adjacent," which is "not distant: nearby." (R. 27, Genlyte Markman at 21, Ex. D at 56). As explained above, the Court agrees with this construction of "adjacent;" however, Genlyte omits any definition or discussion of "outwardly," which is a key modifier in this phrase. *See also Free Motion*, 423 F.3d at 1349 (upholding district court's construction of "adjacent" as meaning "near").

**B.     "Oriented to direct light downwardly and outwardly"**

In their Joint Statement, the parties originally agreed that the phrase "oriented to direct light downwardly," as used twice in claim 1 and 3, was the only phrase in dispute. (R. 23, Joint Statement at 1-2.) In their briefs, however, the parties realized that the phrase, "oriented to direct light downwardly" ('254 Patent, col.3, ll.40-41), was only used once in the claims, to describe the first light fixture, and a different phrase, "oriented to direct light downwardly and outwardly," was used to describe the second light fixture. ('254 Patent, col.3, ll.43-44.) The parties dispute the construction of both of these phrases. Thus, the Court separately addresses construction of the phrase "oriented to direct light downwardly and outwardly" below.

        **1.     Intrinsic Record**

Kenall asks the Court to construe the phrase "downwardly and outwardly" to mean a single intended directionality of light from the second light fixture, specifically, "the single direction of the focus of the light toward the wall." (R. 28, Kenall Reply at 14.) By contrast, Genlyte argues that the phrase "downwardly and outwardly" means "below and away from center (of the light fixture)." This Court agrees with Genlyte that the plain language of the claim shows that the light is oriented in more than one direction – both downwardly and outwardly, but this Court declines Genlyte's invitation to deviate from this Court's previous claim constructions.

There is no support in the '254 Patent, the extrinsic evidence, or common sense for Kenall's argument that downwardly *and* outwardly means only one direction: outwardly, toward the wall. The words of the claim plainly state that the light has more than one intended directionality: downwardly *and* outwardly. To hold otherwise would render the terms "and outwardly" meaningless. In the first section of claim 1, the '254 Patent describes a light that is oriented only

18

"downwardly," as opposed to both "downwardly and outwardly." ('254 Patent, col.3, ll, 40-44.)
Contrary to Kenall's claims, the fact that the second light fixture is directed to a vertical wall and
reflected from there to a broad area under the body, does not mean that "all" of the light goes toward
the vertical wall and no light travels directly downward. The phrase "oriented to direct light
downwardly and outwardly" means "to set or arrange to direct more light in a downward and
outward direction than in an upward direction."

## 2.  Extrinsic Record

### a.  Expert Report

In his initial statement, Lemons broke apart the phrase "oriented to direct light downwardly
and outwardly," defining "oriented to direct light downwardly" as "to set or arrange to direct
illumination to an area below the product." (Lemons Statement at 2.) Lemons then defined "and
outwardly to a vertical wall surface" as "also aims illumination towards the wall." (*Id.*) In his
surreply statement, Lemons slightly altered this definition to: "(oriented to direct light) below and
away from center [of fixture] (to a vertical wall surface)." (Lemons Surreply at 6.) Lemons explains
that "downwardly and outwardly" does not mean the light is separated in two separate directions,
but that light will also travel below the lighting system without first being reflected off the vertical
wall. (R. 31, Genlyte Surreply at 3; Lemons Surreply at 2-6.) This explanation accords with this
Court's construction.

### b.  Other extrinsic evidence

In its reply, Kenall attached a copy of technical information sheets for MD*4 lighting systems
sold by Genlyte. (R. 28, Kenall Reply, Ex. 4). Not only is this evidence of very little probative
value, but it does not show that the second light fixture directs all light toward a vertical wall. (R.

19

28, Kenall Reply at 13.)

## IV. Is the "medical lighting system" phrase in the preamble a claim limitation?

Lastly, Kenall argues that this Court should determine that the preamble, "medical lighting system," used to introduce claims 1 and 3, is not a claim limitation and should be given no weight. (R. 26, Kenall Markman at 13, citing '254 Patent, col.3, ll.37, 48.) "A preamble may provide context for claim construction." *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1362 (Fed. Cir. 2004). However, "preambles describing the use of an invention generally do not limit the claims because the patentability of apparatus or composition claims depends on the claimed structure, not on the use or purpose of that structure." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 809 (Fed. Cir. 2002). Kenall argues that the claims of the '254 Patent are structurally complete without the preamble, and thus the preamble only states a purpose or intended use for the invention. (R. 26, Kenall Markman at 13, citing *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997)). Genlyte agrees that the preamble, "medical lighting system," does not supply meaning to any term, but is only "an introductory phrase that sets forth the purpose of the invention." (R. 27, Genlyte Markman at 21.) The Court agrees with both parties that the introductory term, or preamble, "medical lighting system" is not a claim limitation.

## CONCLUSION

The Court thus construes the disputed claims as follows: (1) "oriented to direct light downwardly" means "to set or arrange to direct more light in a downward direction than in an upward or outward direction;" (2) "a vertical wall surface outwardly adjacent from said body" means "a vertical wall surface next to or near either end of said body;" and (3) "oriented to direct light downwardly and outwardly" means "to set or arrange to direct more light in a downward and

outward direction than in an upward direction." (R. 26, 27, Markman statements, and R. 32, Motion to Strike.)

ENTERED: _____

Judge Ruben Castillo
**United States District Court**

Dated: February 2, 2006