UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENALL MANUFACTURING | ) | |
| COMPANY, | ) | |
| | ) | No. 05 C 1138 |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Judge Ruben Castillo |
| GENLYTE THOMAS GROUP LLC | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

## MEMORANDUM OPINION AND ORDER

The only thing that the multitude of summary judgment motions and expert reports filed

in this hotly-disputed patent case make clear is that multiple issues of material fact remain to be

determined. Instead of moving this case toward a timely resolution, the parties are driving up the

costs of litigation with superfluous briefing that has repeatedly failed to abide by this Court's

local rules. After wading through the wasted sea of paper filed in support of each of the parties'

motions, all four motions are hereby denied for the reasons contained herein. (R. 56,[1] Genlyte

Mot. Summ. J.; R. 62, Kenall Mot. Summ. J.; R. 83, Invalidity Mot.; R. 92, Mot. to Strike.)

## PROCEDURAL HISTORY

On February 25, 2005, Kenall Manufacturing Company ("Kenall") filed suit against

Genlyte Thomas Group, LLC ("Genlyte") seeking a declaratory judgment that Kenall's products

do not infringe upon Genlyte's Patent Number 5,038,254 ("the '254 Patent"). (R. 1, Compl.)

Genlyte counterclaimed that Kenall directly infringed on the '254 Patent in violation of 35

U.S.C. § 271(a): specifically, that Kenall's MedMaster MPC22 and MPC24 light fixtures

contain each and every element and limitation of at least claim 1 of the '254 Patent. (R. 8,

---

[1]Genlyte's motion for partial summary judgment of infringement is also listed at R. 66.

Answer & Countercl.)

On February 2, 2006, after briefing by the parties, this Court issued a ruling construing

the disputed claim terms in the '254 Patent in accordance with *Markman v. Westview*

*Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995). *See Kenall Mfg. Co. v. Genlyte Thomas Group*

*LLC*, 413 F. Supp. 2d 937 (N.D. Ill. 2006). The parties disputed the meaning of the two

independent claims of the '254 Patent—claims 1 and 3—which state, in relevant part:

> A medical lighting system comprising: a body; means for ceiling-mounting said
> body; a first light fixture within said body oriented to direct light downwardly to a
> selected reading area under said body; a second light fixture within said body
> oriented to direct light downwardly and outwardly to a vertical wall surface
> outwardly adjacent from said body whereby light is reflected back to a broad area
> under said body.

(R. 63, Kenall Mem. Supp. Summ. J., Ex. 1, '254 Patent at col.3, ll.37-48.) This Court held that:

(1) "oriented to direct light downwardly" means "set or arranged to direct more light in a

downward direction than in an upward or outward direction;" (2) "a vertical wall surface

outwardly adjacent from said body" means "a vertical wall surface next to or near either end of

said body;" and (3) "oriented to direct light downwardly and outwardly" means "set or arranged

to direct more light in a downward and outward direction than in an upward direction." *Kenall*,

413 F. Supp. 2d at 949. Incorporating these claim constructions, claims 1 and 3 of the '254

Patent read, in relevant part:

> A medical lighting system comprising: a body; means for ceiling-mounting said
> body; a first light fixture within said body <u>set or arranged to direct more light in a</u>
> <u>downward direction than in an upward or outward direction</u> to a selected reading
> area under said body; a second light fixture within said body <u>set or arranged to</u>
> <u>direct more light in a downward and outward direction than in an upward</u>
> <u>direction</u> to a vertical wall surface <u>next to or near either end of said body</u> whereby
> light is reflected back to a broad area under said body.

After this Court issued its *Markman* opinion, the parties filed cross-motions for summary judgment, claiming that this Court's claim construction ruling definitively shows that Kenall's products infringe, or do not infringe, on the '254 Patent. (R. 56, Genlyte Mot. for Summ. J.; R. 62, Kenall Mot. for Summ. J.) Six weeks later, on May 22, 2006, Kenall filed a second motion for summary judgment arguing that the '254 Patent is indefinite and thus invalid as a matter of law. (R. 84, Mem. Supp. Invalidity Mot. at 1.) Genlyte responded with a motion to strike Kenall's invalidity motion. (R. 94, Mot. to Strike.)[2]

## UNDISPUTED FACTS

Rather than submitting a Northern District of Illinois Local Rule 56.1 statement of facts, Kenall submitted an unorthodox "Proposed Findings of Fact and Conclusions of Law" along with its brief in support of its motion for summary judgment of non-infringement. (R. 64.) Genlyte did not object to the form of Kenall's statement of facts and responded to Kenall's proposed statement of facts as if it were a proper 56.1 statement. (R. 73, Genlyte Resp. to Kenall's Facts.) Like Genlyte, this Court will presume that the proposed findings of facts section of Kenall's "Proposed Findings of Fact and Conclusions of Law," are, in essence, Kenall's 56.1 statement of undisputed material facts.

---

[2]On May 11, 2006 Kenall filed a Motion to Allow Possible Supplemental Reply, claiming the supplement was necessary because of "newly discovered" evidence. (R. 76.) On May 23, 2006, this Court granted Kenall's motion. (R. 88.) This Court's decision to allow the reply was based on Kenall's representation that Thomas Lemons, Genlyte's expert, had not submitted an expert report prior to the summary judgment briefing, so Kenall wanted the opportunity to file a supplemental brief after deposing Lemons regarding his report. (R. 120.) Over a month later, after both parties finished briefing all three dispositive motions, Kenall filed its "Supplemental Reply." (R. 120.) Not only was the supplemental reply late, but it adds nothing new to Kenall's original summary judgment brief and recites the same arguments already advanced by Kenall in previous briefs.

This Court, however, cannot save Kenall from its failure to respond to Genlyte's Rule 56.1 statement of undisputed facts, which Genlyte filed in conjunction with its motion for partial summary judgment of infringement. (R. 56-2.) Rather than responding to Genlyte's statement of undisputed facts, Kenall merely "comments" that "Genlyte's proposed findings of fact fall short of providing enough data upon which this Court could possibly base a finding of infringement," and instructs this Court to disregard Genlyte's allegedly improper claim construction and light measurements. (R. 75, Kenall Resp. at 12.) This is an obvious violation of Local Rule 56.1(b), which mandates that a party opposing a motion for summary judgment file:

> a concise response to the movant's statement that shall contain: (A) numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed, and (B) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b)(3). Furthermore, "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id.* Because Kenall failed to file a 56.1(b)(3) statement disputing Genlyte's facts, this Court will deem the facts alleged in Genlyte's 56.1 statement admitted. *See Hudson v. West Harvey/Dixmoor Sch. Dist. No. 147*, 168 F. Supp. 2d 851, 852 (N.D. Ill. 2001) (citing *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir.2000) (upholding strict application of Local Rule 56.1)).

Fortunately for Kenall, Genlyte's 56.1 statement of facts does not state sufficient facts upon which this Court could grant summary judgment in Genlyte's favor. Rather, Genlyte's 56.1 statement contains many legal conclusions as to whether the accused Kenall products infringe on

the '254 Patent and additional claim construction arguments. The Court will not deem these self-serving legal conclusions admitted as they fail to comply with Local Rule 56.1. *Greer v. Bd. of Educ. of City of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001). This Court has parsed out the parties' conclusions of law from their allegations of fact, and finds the relevant undisputed facts to be as follows.

## I.     The Parties

Kenall is an Illinois corporation with offices in Gurnee, Illinois, and Genlyte is a limited liability company with its principal place of business in Louisville, Kentucky. (R. 73, Genlyte Resp. to Kenall Facts at ¶¶ 1-2.) The '254 Patent was filed with the United States Patent and Trademark Office ("USPTO") on December 18, 1990 and issued on August 6, 1991 in the names of inventors William C. Fabbri and Roy Crane. (R. 56, Genlyte Facts at ¶ 20.) By assignment, Genlyte became and is now the owner of the '254 Patent. (*Id.* at ¶ 22.) The term of the '254 Patent expires on December 18, 2010. (*Id.* at ¶ 24.)

## II.     MedMaster MPC24

Kenall manufactures the MedMaster MPC24 ("MPC24") and the MedMaster MPC22 ("MPC22") and sells them in the United States without authority from Genlyte. (*Id.* at ¶¶ 32-33.) The MPC24 and MPC22 are medical lighting systems for use in hospital patient rooms. (*Id.* at ¶ 34.) The MPC24 is designed to be ceiling-mounted over a hospital patient bed with the sides of the lighting system aligned in a parallel relationship with the longer sides of the bed, and the ends of the system perpendicular to the sides and parallel to a room wall near the head of the bed. (R. 73, Genlyte Resp. to Kenall's Facts at ¶ 9.) The MPC24 product includes reading, ambient, and examination light fixtures. (*Id.* at ¶ 8.) The light source of the ambient light fixture of the

5

MPC24 multi-fixture product is Biax type fluorescent tubes. (*Id.* at ¶ 10.) These tubes are placed perpendicular to the ends of the product and to the room wall at the end of the bed (the "head wall" or "vertical wall"). (*Id.*) The MPC24's ambient fixture contains a white painted reflector. (R. 56, Genlyte Facts at ¶ 40.)

The Independent Testing Laboratories, Inc. ("ITL") photometric report number ITL54658 provides the photometrics[3] for the reading light fixture of the MPC24. (*Id.* at ¶ 42.) According to ITL54658, the reading light of the MPC24 directs 1307 lumens to the area between 0 degrees (straight down to the patient bed) and 45 degrees. (*Id.* at ¶ 44.) The ITL54658 provides that the reading light of the MPC24 directs 803 lumens to the area between 45 and 90 degrees (along the ceiling or horizontal). (*Id.* at ¶ 45.) The ITL54658 report provides that the reading light of the MPC24 directs 0 lumens to the area between 90 degrees and 180 degrees (vertically up into the ceiling). (*Id.* at ¶ 46.) According to ITL54658, 62% of the reading light output is directed to the area between 0 and 45 degrees. (*Id.* at ¶ 47.)

ITL report number ITL54657 photometric report provides the photometrics for the ambient light fixture of the MPC24. (*Id.* at ¶ 48.) This report provides that the ambient light fixture of the MPC24 directs 3964 lumens to the area between 0 degrees and 90 degrees, of which 2092 lumens is from 0 to 45 degrees. (*Id.* at ¶ 50.) According to the ITL54657 report, the ambient light of the MPC24 provides 0 lumens to the area between 90 and 180 degrees. (*Id.* at ¶ 51.) The ITL54657 provides that 100% of the ambient light output is directed to the area

---

[3]The ITL reports include two measurements of light. The first is the luminous flux, or the time rate of flow of light, from the light fixtures irrespective of direction. The unit of measure for luminous flux is the lumen. The second measurement is the light, or luminous, intensity, which measures the light density within a solid angle in a specified direction. The unit of measure for light intensity is the candela.

between 0 and 90 degrees. (*Id.* at ¶ 52.)

## III.  MedMaster MPC22

The MPC22 is a multi-fixture product, which includes reading and ambient light fixtures. (R. 73, Genlyte Resp. to Kenall Facts at ¶ 14.) Like the MPC24, the MPC22 is designed to be installed over a hospital bed. (*Id.* at ¶ 15.) The source of the ambient light fixture is Biax type fluorescent tubes which are placed perpendicular to the ends of the product and to the room wall at the end of the bed. (*Id.* at ¶ 16.) The MPC22's ambient light fixture contains a white painted reflector. (R. 56, Genlyte Facts at ¶ 56.)

The MPC22-G-RDG report, published by Kenall, provides the photometrics for the reading light fixture of the MPC22. (*Id.* at ¶ 57.) This report provides that the reading light fixture of the MPC22 directs 743 lumens to the area between 0 and 45 degrees, and 399 lumens to the area between 45 and 180 degrees (365 lumens of which are from 45 to 90 degrees). (*Id.* at ¶¶ 59-60.) The MPC22-G-RDG provides that 65% of the reading light fixture output is directed to the area between 0 and 45 degrees. (*Id.* at ¶ 61.)

The MPC22-G-AMB report provides the photometrics for the ambient light fixture of the MPC22. (*Id.* at ¶ 62.) This report provides that the ambient light fixture of the MPC22 directs 2167 lumens to an area between 0 and 90 degrees, with 927 lumens from 0 to 45 degrees. (*Id.* at ¶ 64.) The MPC22 directs 7 lumens to the area between 90 and 180 degrees. (*Id.* at ¶ 65.) The MPC22-G-AMB report provides that 99.7% of the ambient light fixture of the MPC22 light output is directed to the area between 0 and 90 degrees. (*Id.* at ¶ 66.)

## IV.  The '254 Patent

The '254 Patent describes an integrated ceiling-mounted medical lighting system which

7

includes three individual dedicated light fixtures. (R. 63, Kenall Mem. Supp. Summ. J., Ex. 1, '254 Patent at col.1, ll.62-64.) The lighting system is rectangular, and it is designed to be placed next to or near where the wall and the ceiling connect at the head of a patient's hospital bed. (*Id.* at col.1, ll.65-68.)

The remainder of Genlyte's 56.1 statement does not recite undisputed material facts, but rather reaches legal conclusions by attempting to apply the aforementioned facts to this Court's prior claim construction ruling. This Court will not deem these legal conclusions admitted, but will instead address these legal conclusions below.

## LEGAL STANDARDS

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate in a patent case where the facts show that there is no genuine issue of any fact material to a finding of infringement. *Vivid Techs., Inc. v. Am. Science & Eng'g, Inc.*, 200 F.3d 795, 807 (Fed. Cir. 1999). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 249 (citations and quotations omitted). On summary judgment, the Court must "construe all facts in the light most favorable to the nonmoving party and draw all

8

reasonable and justifiable inferences in favor of that party." *King v. Preferred Tech. Group*, 166 F.3d 887, 890 (7th Cir. 1999). When considering cross-motions for summary judgment, the Court will make all inferences in favor of the party against whom the motion under consideration was made. *Allen v. City of Chi.*, 351 F.3d 306, 311 (7th Cir. 2003).

## ANALYSIS

Genlyte claims that Kenall infringed—both literally and by equivalents[4]—on claim 1 of the '254 Patent. (R. 57, Genlyte Mem. Supp. Summ. J. at 6.) Claim 1 of the '254 Patent states:

> A medical lighting system comprising: a body; means for ceiling-mounting said body; a first light fixture within said body oriented to direct light downwardly to a selected reading area under said body; a second light fixture within said body oriented to direct light downwardly and outwardly to a vertical wall surface outwardly adjacent from said body whereby light is reflected back to a broad area under said body.

(R. 63, Kenall Mem. Supp. Summ. J., Ex. 1, '254 Patent at col.3, ll.37-48.) Kenall does not dispute that its products infringe the limitations laid out in the first, or reading, light fixture described in claim 1. The parties only dispute whether the Kenall products contain every limitation laid out in the second light fixture within claim 1. The second light fixture in claim 1 of the '254 Patent as previously construed by this Court is: "set or arranged to direct more light in a downward and outward direction than in an upward direction to a vertical wall surface next to or near either end of said body whereby light is reflected back to a broad area under said body." *Kenall*, 413 F. Supp. 2d at 949.

A determination of infringement requires a two-step analysis. First, "the court construes

---

[4]Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent. *Aquatex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005).

the asserted claims in order to determine their proper meaning and scope." *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308, F.3d 1167, 1176 (Fed. Cir. 2002); *see also Markman*, 52 F.3d at 979. Here, this Court construed the proper meaning and scope of the terms disputed by the parties in its February 2, 2006 *Markman* Opinion. *Kenall*, 413 F. Supp. 2d 937. Second, the fact-finder must determine whether every claim limitation of at least one claim is present—either literally or by equivalents—in the accused device. *Pause Tech., LLC v. TiVo, Inc.*, 419 F.3d 1326, 1329 (Fed. Cir. 2005); *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1341 (Fed. Cir. 2001).

## I.      Claim Construction

Despite this Court's prior claim construction ruling following extensive briefing by the parties, Kenall and Genlyte continue to dispute the meaning of the claim terms "downwardly" and "outwardly," as well as the meaning of the words "upwardly" and "more," as used by this Court in construing the disputed claim terms. It is well-settled that "[d]istrict courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves." *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1364 (Fed. Cir. 2005). Claim 1 of the '254 Patent reads, in relevant part: "a second light fixture within said body oriented to direct light downwardly and outwardly to a vertical wall surface outwardly adjacent from said body whereby light is reflected back to a broad area under said body." (R. 63, Kenall Mem. Supp. Summ. J., Ex. 1, '254 Patent at col.3, ll.37-48.) In the previous claim construction ruling, this Court construed this phrase to mean: "set or arranged to direct more light in a downward and outward direction than in an upward direction to a vertical wall surface next to or near either end of said body whereby light is reflected back to a

10

broad area under said body."[5] *Kenall*, 413 F. Supp. 2d at 949. While this interpretation is correct, this Court will clarify and elaborate on the meaning of the "second light fixture" so as to eliminate further confusion—or manipulation—of its meaning by the parties.

In arguing for their proposed interpretations of the second light fixture, the parties continue to read terms within claim 1 of the '254 Patent in isolation, thus eliciting conflicting definitions. "Proper claim construction, however, demands interpretation of the entire claim in context, not a single element in isolation." *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1090 (Fed. Cir. 2003) (quoting *Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1374 (Fed. Cir. 1999)). Genlyte completely ignores the phrase "to a vertical wall surface " to support its argument that while more light must be directed in a downward and outward direction than upwardly, it is irrelevant whether the ambient light directs more light toward the vertical headwall than toward the sides.[6] (R. 74, Genlyte Opp'n Mem. at 5, 10-11.) In addition, Genlyte's expert, Thomas Lemons, constructs a chart matching precise angles of light with "directional zones" of light—up, upward, out, outward, down, and downward—providing only conclusory reasons for this construction. (R. 74, Genlyte Opp'n Mem., Ex. 1, Lemons Rebuttal Decl. at 5).

By contrast, Kenall argues that its products do not infringe the ambient light fixture in claim 1 of the '254 Patent because its products directs more light downward and to the sides of

---

[5]The parties agree that the relevant "vertical wall surface" is the headwall, the wall located at the head of the hospital patient's bed. (R. 63, Kenall Mem. Supp. Summ. J. at 8-9; R. 74, Genlyte Opp'n Mot. at 5.)

[6]Genlyte's expert, Thomas Lemons, goes so far as to argue that this Court's claim construction nowhere indicates that more light should be directed by the ambient fixture "toward a particular vertical wall surface." (*Id.*, Ex. 1, Lemons' Rebuttal Decl. at 4.)

the light fixtures than to a vertical wall surface. (R. 75, Kenall Resp. at 5.) Furthermore,

Kenall's expert, Ian Lewin, PhD., uses the Illuminating Engineering Society of North American

("IESNA") Handbook's Glossary to define "downward" as all light below the horizontal and

"upward" as all light above the horizontal. (R. 75, Kenall Resp., Lewin Resp. at 1-2.) Lewin,

however, ignores the term "outward," even though the Federal Circuit discourages construing

terms in a way that would render other parts of the claim superfluous. *Merck & Co., Inc. v. Teva*

*Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005).

Neither expert has it right. "[A] court should discount any expert testimony that is clearly

at odds with the claim construction mandated by the claims themselves, the written description,

and the prosecution history, in other words with the written record of the patent." *Pause Tech.*,

419 F.3d at 1333 (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005)). As

such, Lemons' disregard of the phrase "to a vertical wall" cannot be right, and Lewin's disregard

of the term "outward" cannot be right either. Furthermore, the '254 Patent is a ceiling mounted

medical lighting system, which necessarily directs almost no light above the horizontal; in fact,

the ambient light fixture of the MPC24 provides 0 lumens of light to the area between 90 and

180 degrees (the area above the horizontal, with 0° going directly down to the patient's hospital

bed), and the MPC22 provides only 7 lumens, or .3% of light to that same area. (R. 56, Genlyte

Facts ¶¶ at 51, 65-66.) Thus, Genlyte's definition of upward as including area below the

horizontal does not make sense.

Given the parties' continued disagreement over—or manipulation of—the meaning of the

second light fixture, this Court's prior claim construction warrants elaboration. District courts

begin their claim construction analysis with the words of the claim, as they define the invention,

12

and "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1142 (Fed. Cir. 2005). The '254 Patent does not include any specific angular measurements, and indeed, the '254 Patent's specification indicates that the "downwardly and outwardly" oriented light is not meant to be interpreted according to strict angular measurements and is not conducive to such measurements. Lewin's and the IESNA's definition of downwardly, however, is incomplete, as it ignores the term "outwardly." That term, however, is not rendered superfluous because as the experts agree, light is emitted on multiple planes. (R. 79, Genlyte Reply, Ex. 3, Lemons Reply Decl. at 3; R. 63, Kenall Mem. Supp. Summ. J., Lewin Decl. at 5.) While upward light is indeed light above the horizontal and downward light is light below the horizontal (as defined by the IESNA and in accordance with the '254 Patent), "outwardly" here identifies the direction of light in a different plane: specifically, "to a vertical wall," as specified in claim 1 of the '254 Patent.

Furthermore, while some ambient light travels directly downward toward the hospital bed—hence the term "downwardly,"—the patent specification of the '254 Patent demonstrates that the majority, or "more," of the downwardly and outwardly directed light goes "outwardly to a vertical wall surface." *See Kenall*, 413 F. Supp. 2d at 948; R. 63, Kenall Mem. Supp. Summ. J., Ex. 1, '254 Patent at col.3, ll.44-45. The Abstract of the '254 Patent states that: "[t]he ambient light directs light to a wall abutting the head of the hospital bed thereby providing reflected light to the vicinity of the hospital bed." (R. 63, Kenall Mem. Supp. Summ. J., Ex. 1, '254 Patent at Abstract (emphasis added).) Similarly, the Patent Object and Summary of the Invention section of the '254 Patent states that: "[a] second light fixture includes a fluorescent

bulb and a reflector <u>designed to direct light toward a vertical wall abutting the head of the</u> <u>patient's bed</u> so as to provide a reflected light over a large area around the patient's bed." (*Id.* at col. 2, ll.6-10 (emphasis added).) This is in contrast to the reading light, which "is directed toward a selected reading area on a hospital bed directly below the medical lighting system." (*Id.* at Abstract.) Claim 1 states this difference as "oriented to direct light downwardly to a selected reading area under said body" versus "oriented to direct light downwardly and outwardly to a vertical wall surface . . . whereas light is reflected back to a broad area under said body." (*Id.* at col.3, ll.43-47.) This distinction shows that "downwardly" means directly below the medical system, while "outwardly" means toward the wall, specifically, the identified "vertical wall. Accordingly, not only is the ambient light fixture set or arranged to direct light both downwardly and outwardly to a vertical wall as opposed to upwardly, but more of this light is directed outwardly to the vertical wall than downwardly, so that the light can be reflected off the vertical wall onto the patient's bed.

In addition, the parties now specifically agree that the "vertical wall surface outwardly adjacent from said body" is the wall located at the head of the hospital patient's bed. (R. 63, Kenall Mem. Supp. Summ. J. at 8-9; R. 74, Genlyte Opp'n Mot. at 5.) As such, this Court clarifies its previous construction of the second light fixture in claim 1 of the '254 Patent as follows: "a second light fixture within said body set or arranged to direct some light in a downward direction toward the hospital bed and the majority of light in an outward direction toward the wall located at the head of the hospital patient's bed, whereby light is reflected back

14

to a broad area under said body."[7]

## II.    Infringement

The second step of the infringement analysis—whether every claim limitation of at least one claim are present in the accused device—is generally an issue of fact. *Pause Tech.*, 419 F.3d at 1329. "Direct infringement consists of making, using, offering to sell or selling the invention defined by the claims of the patent." *Hoescht-Roussel Pharm., Inc. v. Lehman*, 109 F.3d 756, 759 (Fed. Cir. 1997). Only a single claim need be infringed to constitute infringement. *Panduit Corp. v. Dennison Mfg. Co.*, 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987). However, every limitation laid out in a patent claim must be found in an accused product to constitute literal infringement. *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997); *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1376 (Fed. Cir. 2004). Here, Genlyte argues that there is no genuine issue of material fact that Kenall's MPC22 and MPC24 infringe the '254 Patent both literally and under the doctrine of equivalents, and thus, that this Court must grant judgment in its favor. *See Key Mfg. Group, Inc. V. Microdot, Inc.*, 925 F.2d 1444, 1449 (Fed. Cir. 1991) (holding that infringement may be found either literally or under the doctrine of equivalents). Conversely, Kenall argues that there is no genuine issue of material fact that the MPC22 and MPC24 do *not* infringe on the '254 Patent, and this Court should grant summary judgment in Kenall's favor.

As explained above, as to claim 1 of the '254 Patent—the only claim at issue in this case—Kenall disputes that the MPC22 and MPC24 contain every limitation laid out as to the

---

[7] As both the parties and their experts spent significant time debating the construction of these phrases in claim 1 of the '254 Patent in their summary judgment briefs, the Court will not entertain further briefing on claim construction in this case.

second light fixture. As infringement analysis involves comparing a claim as construed by the Court with the accused device, *Markman*, 52 F.3d at 976, this Court must analyze whether the MPC22 and the MPC24 contain each limitation of the second light fixture of claim 1 as construed and clarified above by this Court.

## A.    Literal Infringement

Genlyte first alleges that Kenall's MPC22 and MPC24 literally infringe on the '254 Patent in violation of 35 U.S.C. § 271(a), which states that "whoever without authority makes, uses, offers to sell, or sells any patent invention, within the United States or imports into the United States any patented invention, during the term of the patent therefore, infringes the patent." Genlyte argues that Kenall's products contain every limitation laid out as to the second light fixture in claim 1 of the '254 Patent. The parties disagree as to whether the second light fixture in the Kenall products is set or arranged to direct the majority of light in an outward direction toward the wall located at the head of the hospital patient's bed. Kenall argues that its products direct more light downwardly and toward the sides than to the headwall, while Genlyte argues that its measurements show that the Kenall products infringe because they, like the '254 Patent, emit more light toward the wall at the head of the patient's bed. Thus, the answer to the infringement question comes down to measurement of the light toward the headwall versus to the sides of the Kenall ambient light fixtures.

This question, however, cannot be answered at this time, as the experts—whose expertise in the art of lighting design, measurement, and distribution neither party questions—cannot even agree on the proper measurement of light. Both experts have examined the MPC22, the MPC24, the literature in the lighting field, the '254 Patent, the deposition testimony, and have conducted

16

their own tests—neither method of which has been conclusively shown to be more reliable or accurate than the other—and still come to different conclusions as to infringement. Therefore, material issues of fact regarding infringement remain in this case. *See Hilgraeve Corp. v. McAfee Assocs., Inc.*, 224 F.3d 1349, 1352 (Fed. Cir. 2000) (finding on a similar record that conflicting allegations of experts left material factual questions unanswered).[8] Summary judgment is inappropriate where, as here, a case may ultimately turn on the credibility of the expert witnesses. *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1361-62 (Fed. Cir. 2002). This Court will outline the specific disagreements that preclude summary judgment below.

### 1. Measurement of Light Directed to Walls

Genlyte agrees with Kenall that light can be calculated from the directional intensity provided by a fixture and that light distribution is affected by the placement of the luminaire, or light fixture, in the room, with more light reflecting off the wall when the fixture is set closer to the wall. (R. 79, Genlyte Reply, Ex. 3, Lemons Reply at 8.) However, the parties' agreement as to light measurement ends there. Lemons argues that Kenall improperly measures light intensity without regard to the width and angle of the light beam. (*Id.*, Lemons Reply at 3.) In addition, Lemons claims that Lewin improperly measured the intensity of light in only two planes rather than in multiple planes since light is emitted in a cone shape. (R. 74, Genlyte Opp'n Mem. at 7-8; Lemons Rebuttal Decl. at 5-6.) Lewin contends, however, that he properly measured the

---

[8]*See also Edwards Sys. Tech., Inc. v. Digital Control Sys., Inc.*, Nos. 03-1116, 03-1166, 03-1419, 2004 WL 1153662, at *11 (Fed. Cir. May 18, 2004) (noting that where experts disagree with each other's methods and conclusions and raise issues regarding each other's credibility, summary judgment is not appropriate and the trier of fact must consider the evidence.)

intensity of light, comparing the intensity of light of Kenall's ambient fixtures toward the headwall with the intensity of light in other directions, and finding that the intensity of light toward the headwall and downwardly was higher than toward the vertical wall. (R. 81, Kenall Reply, Ex. 1, Lewin Reply Decl. at 3.)

Genlyte argues that it is entitled to summary judgment despite this disagreement because the photometric reports relied upon by Kenall are irrelevant to the lighting measurements in this case. Lemons explains that the ITL reports Kenall relies on use far-field photometry, whereas near-field photometry is required in this case. (R. 74, Genlyte Opp'n Mem., Ex. 1, Lemons Rebuttal Decl. at 11). Genlyte contends that Kenall's products must be measured using near-field conditions since the light fixtures are ceiling mounted near or abutting the head wall, and far-field data does not permit reliable photometric calculations in those circumstances. (R. 74, Genlyte Opp'n Mem. at 8.) Lewin argues, however, that the far-field photometry argument is a red-herring, as the IESNA Approved Guide to Near-Field Photometry[9] does not require near-field photometry in these situations. (R. 81, Kenall Reply, Ex. 1, Lewin Reply Decl. at 5-6.) In addition, Lewin notes that as the owner of an independent photometric test laboratory, his clients have never asked him to conduct near-field photometry on any fixture remotely similar to the Kenall ambient lights. (*Id.* at 6.) Thus, an issue of fact remains as to whether far-field or near-field optometry is an appropriate measure of light for the Kenall ambient light fixtures.

Even if the photometric tests are agreed upon, however, Lemons and Lewin come to different conclusions as to whether the majority of light is directed toward the headwall or

---

[9]Lewin was a member of the sub-committee that authored this IESNA document and a member and past-chairman of the IESNA Testing Procedures Committee.

elsewhere. (R. 74, Genlyte Opp'n Mem., Ex. 1, Lemons Rebuttal Decl. at 4.) Lemons agrees that the MPC24 has greater light intensity crosswise toward the sides than towards an end wall for certain vertical angles, but not others. (*Id.* 2,4.) Furthermore, Genlyte claims that the quality, not just the quantity, of light must be measured, which includes a measurement of the width of the beam spread onto the headwall. (R. 79, Genlyte Reply, Ex. 3, Lemons Reply at 8-9.) Using this measurement, Genlyte claims that Kenall's products direct a substantial "quality of light to the headwall." (*Id.*) Lemons explains that Kenall's ambient fixtures emit light in a wide sweep—159°—to the headwall, while the sides receive only 75° or 43° beams of light. (*Id.*, Genlyte Reply at 6; Ex. 3, Lemons Reply at 3.) Lemons points to photographs that he had taken of the Kenall fixtures that appear to be flush with the headwall, which he claims demonstrate that the wall adjacent to the patient's bed receives the greatest intensity and "quality" of light. (R. 74, Genlyte Opp'n Mem. at 9, Ex. 1, Lemons Rebuttal Decl. at 8-11, Exs. O, P, Q.) In addition, Lemons claims Kenall's photometric data from ITL shows that the Kenall ambient fixtures direct more light onto the headwall in the 65° to 85° zone than to the sides of the Kenall fixtures. (*Id.*, Lemons Rebuttal at 12, 14.)

Kenall rebuts each of these arguments, precluding this Court from reaching a determination at the summary judgment stage as to whether the second light fixture in the Kenall products is set or arranged to direct the majority of light in an outward direction toward the wall located at the head of the hospital patient's bed. Unlike the '254 Patent, whose ambient light is provided from the reflection of the ambient light off the room wall, Kenall explains that the ambient light of the Kenall products is provided directly from the light fixtures, projecting its maximum intensity towards the bed, and the majority of the remaining light going toward the

19

sides of the light fixtures. (R. 79, Genlyte Reply, Ex. 3, Lemons Reply at 9.) Lewin provides a chart of multiple down angles of light to show that the greatest light intensity from the Kenall ambient light fixtures is downward and that more light is emitted to the sides of the light fixtures than to the headwall. (R. 75, Kenall Resp. at 11; R. 81, Kenall Reply, Ex. 1, Lewin Reply Decl. at 2-6.) In other words, Lewin maintains that even using Lemons' angle approach, the majority of light is not directed toward the headwall as limited in the '254 Patent. (R. 75, Kenall Resp., Ex. 1, Lewin Resp. at 7; R. 81, Kenall Reply, Ex. 1, Lewin Reply Decl. at 2-4.) Even though the Kenall ambient fixtures direct what Lewin claims is an equal amount of light onto the headwall in the zone from 65° to 85° as to the sides, the majority of light is still directed downward and to the sides at angles other than 65° to 85°. (R. 74, Genlyte Opp'n Mem., Ex. 1, Lemons Rebuttal Decl. at 12, 14.)

Lewin also disputes Lemons' use of photographs. First, Lewin argues that photographs are not the manner in which a person of ordinary skill in the art would measure light distribution. (R. 75, Kenall Resp., Ex. 1, Lewin Resp. at 6.) Rather, the correct measure of light distribution is direct photometric data, which has many fewer variables than photographs. (*Id.*, Kenall Resp. at 10.) Second, Lewin quarrels with Lemons' interpretation of the photographs of the Kenall fixtures, as the dimensions of the hospital room—which are not specified by Lemons—can be manipulated to reach different results. (*Id.*) Where the light is set further from the wall, the directional intensity (candela) must be greater to achieve the same amount of light on the abutting wall, and the higher the ceiling, the more light is directed to the end wall. (*Id.*, Lewin Resp. at 6-7.) Specifically, it appears from the photographs—and from Lemons use of the term "abutting"—that Lemons placed the Kenall fixtures flush with the headwall, thus exaggerating

the brightness of light on that wall. While "abutting" the headwall is the preferred embodiment of the '254 Patent, the Kenall fixture's normal location varies up to 24 inches from the headwall, depending on the height of the ceiling and the distance of the patient bed from the wall. (*Id.*, Lewin Resp. at 5; R. 79, Genlyte Reply, Ex. 1, McCarthy Dep. at pp.58-59.)[10] To prove his point, Lewin attaches photographs of the reading light which—while the parties agree it directs light downward—creates a light spot on the headwall when it is placed abutting the headwall, similar to the ambient light. (R. 75, Kenall Resp. at 11-12, Ex. 1, Lewin Exs. 2-3.) Therefore, the existence of multiple issues of fact preclude summary judgment for either party.

## 2.    Parallel Versus Perpendicular Light Fixtures

The parties do not dispute that the ambient light fixtures in the Kenall products are set or arranged in a different position from the ambient light fixture in the '254 Patent. The ambient light fixture in both the MPC24 and the MPC22 is placed perpendicular to the vertical room wall, or headwall, at the end of the hospital patient's bed. (R. 73, Genlyte Resp. to Kenall Facts at ¶¶ 9, 16.) By contrast, Genlyte does not dispute that the ambient light fixture in the '254 Patent—according to its preferred embodiment— is placed parallel to the headwall. (R. 63, Kenall Mem. Supp. Summ. J., Lewin Decl. 4-5; *Id.*, Kenall Mem. Supp. Summ. J., Ex. 1, '254 Patent at col.2, ll.50-55.)

Genlyte argues, however, that data sheets for light fixtures made by other

---

[10]Much of the testimony of Charles McCarthy, Kenall's Chief Design Engineer, regarding the design intent behind the MPC22 and MPC24 is not relevant here because "intent is not an element of direct infringement, whether literal or by equivalents . . . . Infringement is, and should remain, a strict liability offense." *Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1527 (Fed. Cir. 1995) (*en banc*). However, his testimony as to how the MPC22 and MPC24 are set or arranged in practice is relevant here.

manufacturers—such as the Lightolier, Prescolite and Lithonia/Gotham—show that even a perpendicularly placed light fixture may be directed to illuminate a vertical wall. (R. 74, Genlyte Opp'n Mem., Ex. 1, Lemons Rebuttal at 10.) Kenall and its expert, Lewin, disagree, arguing that ambient lights set perpendicular to a wall are not set or arranged to direct more light to that wall. (R. 75, Kenall Resp. at 2.) Lewin explains that the products noted by Lemons are unlike the Biax elongated fluorescent lights in the Kenall products, because they are "washers," which are of such small size that lamp orientation is irrelevant. (R. 81, Kenall Reply, Ex 1, Lewin Reply Decl. at 5.) Lewin argues that all long fluorescent tubes—such as those the ambient light fixture contains—that direct light toward a wall have their tubes running parallel to the wall to allow the maximum intensity of light to strike the wall. (*Id.*; R. 63, Kenall Mem. Supp. Summ. J., Ex. 2, Lewin Decl. at 3-4.) Lewin cites to a certified lighting test report dated May 15, 2006, to confirm that the crosswise light emission from a fluorescent tube is greater than its emission towards the ends; *i.e.*, more light would be directed to the sides parallel to the fluorescent tube than to the wall at the end, perpendicular to the tube. (R. 81, Kenall Reply, Ex 1, Lewin Reply Decl. at 5, Ex. E.) Conversely, Lewin argues, when a fluorescent tube is oriented perpendicular to the wall such as in the Kenall fixtures, the maximum intensity is not aimed towards the wall, but rather at 90° thereto, with light to the sides of the Kenall ambient light fixtures being of the maximum intensity. (R. 63, Kenall Mem. Supp. Summ. J., Ex. 2, Lewin Decl. at 4.) The experts' disagreement over whether light fixtures set perpendicular or parallel to a wall may direct light to that wall further demonstrates material issues of fact that preclude summary judgment.

### 3.   Nature of Reflective Surfaces

The parties also dispute the nature and effect of the reflective surfaces on the accused

22

Kenall devices. Kenall and Lewin argue that the reflective surfaces on the Kenall devices, unlike the '254 Patent, are not set or arranged to direct more light toward the headwall. (R. 75, Kenall Resp. at 2.) Kenall explains that the painted nature of the reflective surfaces tends to diffuse light downwardly, allowing only some indirect light to reach the headwall. (*Id.*) Since the Kenall products direct light downwardly, rather than outwardly toward a vertical wall, Kenall tries to mitigate glare in the patients' eyes through use of these white painted shields. (R. 81, Kenall Reply, Ex 1, Lewin Reply Decl. at 8-9.) Genlyte counters that a white painted surface has a circular distribution that will still direct light onto the abutting wall. (R. 74, Genlyte Opp'n Mem., Ex. 1, Lemons Rebuttal Decl. at 5-6.) Again, summary judgment is not the appropriate stage to determine which expert is correct here.

## B. Doctrine of Equivalents

Finally, Genlyte argues that even if this Court determines that the MPC22 and MPC24 do not literally infringe claim 1 of the '254 Patent, they do infringe under the doctrine of equivalents. (R. 74, Genlyte Opp'n Mem. at 12-13.) Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent. *Aquatex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005). As such, "[t]he doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Id.* (citations and quotations omitted). The test for whether differences between the accused product and the claim limitation are "insubstantial" is "whether the element in the accused device performs substantially the same function in substantially the same way to obtain the same result as the claim limitation." *Id.* (citations and quotations omitted).

23

Genlyte argues that the Kenall MPC22 and MPC24 fixtures infringe the '254 Patent because under the doctrine of equivalents the Kenall "ambient" fixtures perform substantially the same function (general illumination), in substantially the same way (light from the ambient fixture reflects or bounces off the headwall as shown in the photographs) to obtain the substantially the same result (illuminance of a broad area under the Kenall fixtures). (R. 74, Genlyte Opp'n Mem. at 14, Ex. 1, Lemons Rebuttal Decl. at 14.) However, it is far from clear that the ambient light fixtures in the Kenall products perform in "substantially the same way" as the second light fixture in the '254 Patent. As explained above, the amount and nature of light from the ambient Kenall fixtures that reflects or bounces off the headwall is in dispute and cannot be determined at this time. Therefore, summary judgment both for Kenall and Genlyte on the basis of the doctrine of equivalents is denied.

## INVALIDITY MOTION

After the parties had filed their summary judgment motions for infringement and non-infringement, Kenall sought leave to file another motion for summary judgment based on the new argument that the '254 Patent was invalid. This Court granted Kenall's request based on Kenall's representation that their decision to file an invalidity motion depended on Genlyte's summary judgment briefing. (R. 65; R. 92, Mot. to Strike, Ex. 1, 3/30/06 Tr. at 4.) Kenall filed their motion six weeks later, alleging that the '254 Patent is invalid as indefinite under 35 U.S.C. § 112. A claim limitation may be expressed in means-plus-function format in accordance with 35 U.S.C. § 112, paragraph 6, which reads:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding

24

structure, material, or acts described in the specification and equivalents thereof. In the invalidity motion, Kenall argues that the second light fixture is an invalid means-plus-function element because the '254 Patent's specification fails to disclose the structure to support claim 1's "means for ceiling-mounting said body." (R. 84, Invalidity Mot. at 2.)[11]

The parties did not raise the issue of whether the second light fixtures constitute a means-plus-function element in their claim construction briefs. *Kenall*, 413 F. Supp. 2d at 939. Genlyte, however, does not dispute that the second light fixture constitutes a means-plus-function element. (R. 90, Genlyte Opp'n to Invalidity Mot. at 2-5.) Indeed, when a disputed claim term uses the word "means," there is a presumption that it is a means-plus-function element, and 35 U.S.C. § 112 applies. *Apex Inc. v. Raritan Computer*, 325 F.3d 1364, 1371 (Fed. Cir. 2003). The parties also do not dispute the meaning of the phrase, "means for ceiling-mounting said body," and Genlyte agrees that the body of the second light fixture is mounted into the ceiling. (*Id*. at 4-5.) Thus, the Court finds that these terms mean exactly what they say; they are the means for ceiling-mounting the lighting system described.

A claim containing a means-plus-function limitation must also include a disclosure of structure in the patent specification to avoid being rendered indefinite and thus invalid. *Budde v.*

---

[11]The argument that the '254 Patent is invalid because it is indefinite has nothing to do with Genlyte's summary judgment briefing because it is based on the language of the '254 Patent itself. This Court is disturbed by Kenall counsel's misrepresentation as to their need for extra time to file their motion for summary judgment based on invalidity. As explained above, however, "[d]istrict courts may engage in a rolling claim construction," *Network Commerce*, 422 F.3d at 1364, and the fact that this Court did not construe the meaning of the means-plus-function term as part of the prior *Markman* proceedings does not prohibit this Court from construing the terms now. Likewise, the Court will determine the structure that corresponds to the means-plus function limitation, since it is a matter of claim construction for the Court. *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1379 (Fed. Cir. 1999). Thus, Genlyte's motion to strike Kenall's motion for summary judgment based on invalidity is denied. (R. 92, Mot. to Strike.)

*Harley-Davidson, Inc.*, 250 F.3d 1369, 1376 (Fed. Cir. 2001). To meet the definiteness requirement, the patentee need not explicitly disclose details of structures well known in the art; rather, the specification need only imply a structure that would be understood by those skilled in the art as performing the function recited in the means-plus-function limitation. *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1302 (Fed. Cir. 2005); *Atmel*, 198 F.3d at 1382. For example, in *Budde*, the patent specification's reference to a "commercially available" vacuum sensor identified sufficient structure because one skilled in the art would understand the structure's capability to perform the claimed function. 250 F.3d at 1382. Likewise, in *S3 Inc. v. Nvidia Corporation*, the specification's reference to a "selector" was sufficient because such term was understood by one skilled in the art to be a well-known structure. 259 F.3d 1364, 1370 (Fed. Cir. 2001).

Patent claims "are afforded a statutory presumption of validity." *Budde*, 250 F.3d at 1376. "[O]vercoming the presumption of validity requires that any facts supporting a holding of invalidity must be proved by clear and convincing evidence." *Id.* Kenall, however, does little more than utter conclusory statements that the '254 Patent is "completely devoid" of any discussion of even a single structure for mounting the body to the ceiling. (R. 83, Kenall Invalidity Mot. at 3, 5.) Furthermore, whether sufficient structure has been disclosed to support a means-plus-function limitation is construed in view of the understanding of one skilled in the art, *Atmel*, 198 F.3d at 1379, yet Kenall includes no expert opinion on this issue.

Genlyte, on the other hand, points to several places in the '254 Patent's specification (the claims and the written description of the patent) where the structure of the "means for ceiling-mount said body" is adequately disclosed to one skilled in the art in satisfaction of the statutory

26

requirements of 35 U.S.C. § 112. First, the preferred embodiment for the '254 Patent describes the light system as rectangular in shape with two long sides and two short sides; specifically, "packaged in a two foot by four foot configuration" to replace a conventional troffer. (R. 90, 4-5, '254 Patent, Co. 2, ll.34-37; Col.3, ll.12-14.) Lemons states that one skilled in the art would know that a troffer is a fixture for fluorescent lighting tubes that is mounted from a ceiling, and thus this conveys to one skilled in the art the structure needed to perform the function of "ceiling-mounting said body." (R. 90, Genlyte Opp'n to Invalidity Mot., Ex. 1, Lemons Reply Decl. at 2-3.) Furthermore, Genlyte claims that the diagrams in the '254 Patent show the structure of the "means for ceiling-mounting said body." Figure 1 shows a side-plan view of the "integrated medical light system installed in a ceiling" (R. 63, Kenall Mem. Supp. Summ. J., Ex. 1, '254 Patent at col.2, ll.32-33), and Figure 2 shows the rectangular shape with two long sides and two short sides, (*id*., col.2, ll.34-37).

Kenall's conclusory arguments do not rise to the level of "clear and convincing evidence" that the '254 Patent specification does not imply to those skilled in the art the structure for performing the "means for ceiling-mounting said body." *Default Proof.*, 412 F.3d at 1302. Kenall summarily replies to Genlyte's arguments that while the word "troffer" may imply to a person of skill in the art various methods of "ceiling-mounting said body," more structure is needed for the "troffer" to necessarily mean that the light fixture is suspended on or in the ceiling as stated in the '254 Patent. (R. 117, Kenall Invalidity Reply at 4-6.) Kenall reference to two continuation-in-part ("CIP") patents of the '254 Patent—5,086,375 and 5,160,193—does not help its argument. While the CIP patents provide more detail than the '254 as to the manner in which the lighting system is mounted, the additional detail provided in the CIP patents as to the

27

manner in which the lighting system is mounted does not mean that the minimal required structure is not present in the '254 Patent. (*Id.* at 10-11.) Thus, Kenall has not met its burden of showing that the '254 Patent is invalid by clear and convincing evidence.

## CONCLUSION

This case has been poorly litigated up to this point. By failing to file a 56.1 statement of facts and by failing to respond to Genlyte's 56.1 statement, Kenall's attorneys have come dangerously close to losing this case for their client based on nothing but their own ineptitude. On the other side, both Genlyte and Kenall have fanned the flame of excessive and superfluous briefing with arguments for unfeasible claim construction and a litany of expert reports that show nothing but material issues of fact. The parties have now spent tens of thousands of dollars on seven expert reports and extensive briefing of three separate motions for summary judgment to prove to this Court that this case is certainly not appropriate for resolution on summary judgment. Each expert has not only conducted their own tests on the disputed fixtures, but they have attached articles that they authored to support their arguments that the second light fixtures of the Kenall MPC22 and MPC24 do or do not infringe on the '254 Patent. The experts use conflicting methods to measure light, and they come to different conclusions as to whether the Kenall products infringe on the '254 Patent. Thus, all of the pending summary judgment motions and the motion to strike are denied. (R. 56, 62, 83, 92.)[12] Having disposed of the patently frivolous summary judgment motions, this case will proceed to trial on December 11, 2006. The parties are again urged to reevaluate their final settlement positions before proceeding further with this litigation.

---

[12]Genlyte's motion for partial summary judgment of infringement is also listed at R. 66.

28

A Final Pretrial Order, which fully comports with this Court's local rules, will be due on or before October 6, 2006. Both parties will need to refocus their efforts to ensure that the jury's time is well used. A status hearing will be held in open court on August 31, 2006 at 9:45 a.m. to discuss: (1) the potential settlement of this case; and (2) any methods (including time limits) which may lead to an orderly and efficient jury trial.

ENTERED: _____

**Judge Ruben Castillo**
**United States District Court**

Dated: July 20, 2006